IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHRIS REED,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | Civil Action No. **3:14-CV-4412-L** |
| | § | |
| **LKQ CORPORATION,** | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant's Motion for New Trial or to Alter or Amend Judgment and Objection to Findings of Fact and Evidence (Doc. 92), filed February 27, 2020. After careful consideration of Defendant's LKQ Corporation ("LKQ" or "Defendant") motion and response of Plaintiff Chris Reed ("Plaintiff" or "Mr. Reed"), LKO's reply, record, and applicable law, the court **denies** Defendant's Motion for New Trial or to Alter or Amend Judgment; and **sustains in part** and **overrules in part** the Objection to Findings of Fact and Evidence.

**I.      Procedural Background**

On September 29, 2014, Mr. Reed, a homeowner in Burleson, Texas, filed this lawsuit in state court against LKQ, the owner and operator of a 71.5-acre automobile reclamation and parts distribution facility across the road from his property. Mr. Reed alleged that dust, debris, trash, and noise generated by LKQ's construction and operation of its salvage business substantially interfered with his use and enjoyment of his property, thereby constituting a private nuisance. Def.'s Not. of Removal, Ex. A (Pl.'s Orig. Pet.) (Doc. 1-2). He sought to recover damages based on the alleged injury to property and personal harm under the tort-based doctrines of intentional nuisance, negligent nuisance, and abnormally dangerous activity nuisance (also known as strict liability nuisance). *Id.*

**Memorandum Opinion and Order – Page 1**

On December 17, 2014, LKQ removed the state action to federal court, contending that complete diversity of citizenship exists between the parties and that the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Def.'s Not. of Removal 1 (Doc. 1).  On February 10, 2015, with leave of court, Mr. Reed filed Plaintiff's First Amended Complaint ("Amended Complaint") (Doc. 11).   Following discovery, on March 28, 2018, LKQ filed a motion for summary judgment on all claims, arguing that it was entitled to judgment as a matter of law because Mr. Reed had failed to raise a genuine dispute of material fact as to each essential element of a private nuisance claim.  On July 6, 2018, the court granted LKQ's motion for summary judgment on Mr. Reed's claim for strict liability nuisance but ruled that his private nuisance claim based on intentional and negligent nuisance remained for trial.  Mem. Op. & Order (Doc. 44).

The court held a bench trial on the remaining nuisance claims on September 12, 2018.  The parties were represented by counsel.  The court heard testimony from the following witnesses: Mr. Reed; his wife Natalie Reed ("Mrs. Reed"); and Steven Massey ("Mr. Massey"), LKQ's corporate representative.  The parties each filed Proposed Findings of Fact and Conclusions of Law on March 21, 2019. (Docs. 76 and 78).  The official transcript from the bench trial was filed on August 7, 2019. (Tr. of Proceedings, hereinafter "Tr.") (Doc. 81).

On September 9, 2019, after granting the parties' Agreed Motion Regarding Site Inspection and LKQ Operations (Doc. 86), the court visited and inspected Mr. Reed's property and informed that parties that it was considering whether to reopen the evidence to include its observations from the site visit.  LKQ objected to reopening the evidence.  After further review of the trial record and consideration of LKQ's objection, the court concluded that reopening the evidence was unnecessary and, accordingly, based its findings of fact and conclusions of law solely on the evidence admitted at trial and testimony of the witnesses.  Contrary to any suggestion by Defendant, the court did not rely on statements made by the parties or the court at the site

inspection. This is so because Defendant expressly objected to reopening the evidence. To remove any doubt, confusion, or misleading statements by LKQ, the court expressly **vacates** its order of August 6, 2019 regarding the reopening of the evidence (Doc. 80).

On January 30, 2020, the court issued judgment in favor of Mr. Reed with respect to his intentional nuisance claim and awarded him $180,550 in compensatory damages and prejudgment interest in this amount of $48,179.64 (calculated from September 29, 2014, through January 29, 2020). The total amount of the judgment was $228,729.64. The court ordered that Mr. Reed take nothing against LKQ on his negligence and strict liability nuisance claims and assessed all allowable and reasonable costs against LKQ.

LKQ contends that the court:

> erred in its liability determination and damages award for Plaintiff, because (1) the [c]ourt improperly took judicial notice of matters without affording LKQ an opportunity to be heard; (2) the matters of which the [c]ourt took judicial notice were not appropriate matters for judicial notice; (3) the judicially noticed matters were not relevant to Plaintiff's claims, nor did they satisfy other evidentiary hurdles; (4) the [c]ourt made findings of fact unsupported by record evidence, (5) the [c]ourt relied on lay witness testimony to establish facts that required expert testimony; and (6) the [c]ourt's damages awards were not supported by sufficient evidence.

Def's. Br. 1. (Doc. 93). After setting forth the applicable standards, the court addresses, as necessary, each argument advanced by LKQ.

## II.    Standards

### A.    Motion to Alter or Amend Judgment

A motion to alter or amend the judgment or to reconsider under Rule 59(e) "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted). Amending a judgment under Rule 59(e) is appropriate: "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or

fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).  Rule 59(e), however, is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," *Templet*, 367 F.3d at 478, and may not be used to relitigate issues that were resolved to the movant's dissatisfaction.  *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989).  District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment."  *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). In exercising this discretion, a district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts."  *Id.*  With this balance in mind, the Fifth Circuit has observed that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).  Stated another way, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."  *Templet*, 367 F.3d at 479.

### B.   Motion for New Trial

Rather than piecing together a standard for a nonjury case with respect to a motion for new trial, the court finds the following language of a case from this district illustrative and informative:

> Under Rule 59(a)(1)(B), a court can grant a new trial "after a nonjury trial[ ] for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  Rule 59(a)(1)(B).  "A motion for a new trial in a nonjury case … should be based upon a manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons."  *Isystems v. Spark Networks Ltd.*, 2015 WL 13469855, at *1 (N.D. Tex. Jan. 13, 2015) (Godbey, J) (quoting *Preston Expl. Co., LP v. GSP, LLC*, 2012 WL 6048947, at *3 (S.D. Tex. 2012), *aff'd*, 566 Fed. Appx. 318 (5th Cir. 2014)).  "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trail."  *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)).  Whether to grant or deny the motion is within "the sound discretion of the trial court[.]"  *Id.*

*Hicks v. R.H. Lending, Inc.*, No. 3:18-CV-0586-D, 2020 WL 2065637, at *1 (N.D. Tex. Apr. 29, 2020, (Fitzwater, J).  Accordingly, this is the standard the court uses to rule on the motion for new trial.

## III.    Discussion

### A.    LKQ's Objection to the Court Taking Judicial Notice of Weather-Related Website

The court **sustains** the objection and determines that consideration of the website in question is unnecessary.  Rather than rely on this evidence, the court relies on Mr. Reed's testimony concerning prevailing winds (Tr. at 41:3-8; 138:8-12; 58:18-59); testimony of Mr. and Mrs. Reed that prior to construction there were no issues with dust or debris or trash or Styrofoam on their property (Tr. at 35:3-24; 36:17-37:18; 37:22-38:11; 39:22-40:3; 41:14-17; 58:15-59:9; 126:19-25; 127:22-128:21); *see also* Pl's Ex. 21-IMG 4766, 4747 (videos of trucks blowing up the dirt on the caliche (chat) surfaces and the dust blowing onto Mr. Reed's property); Pl.'s Ex. 25 (Mr. Massey's letter admitting that LKQ's construction caused a "nuisance" on Mr. Reed's property).

Further, contrary to LKQ's assertion, expert testimony is not needed to determine the direction from which the wind blows.  *See Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406, 410 (Tex. App.—Dallas 1972, no writ) (holding testimony from lay witnesses about the source and severity of foul odors, and that wind carried over the odors to the plaintiff's land sufficient to support jury's nuisance finding); *Bowie Sewerage Co. v. Chandler*, 138 S.W.2d 585, 589 (Tex. Civ. App.—Fort Worth 1940, writ dism'd) ("If offensive odors are emitted from Jones Creek and may be smelled by the persons who live on plaintiff's farm, this may be testified to by laymen, as a matter of course[.]").

Moreover, arguing that expert testimony is necessary to establish wind direction defies common sense and reason.  Although a person cannot see the wind or determine where it starts or ends, a person can feel the wind and determine the direction from which it comes.  Mr. Reed had lived on his property for approximately 12 years before LKQ came on the scene, and his testimony about the direction of the wind was undisputed, and it was reasonable for the court to rely on his testimony.  Arguing that an expert witness is required for a person in Mr. Reed's position to determine the direction from which the wind blows makes about as much sense as arguing that an expert is necessary to determine whether it is raining at a given time.

Finally, insofar as the court's reference to the weather-related website, it was merely "icing on the cake."  The court, through Mr. Reed's testimony, had already determined that the direction of the wind was primarily from the south.  In other words, the "cake had already been baked."  Since, the reference to weather-related website was unnecessary to the court's finding, it **sustains** LKQ's objection, even though the website in question stated that the wind most often blows from the south; and the court notes that wind does not have to blow from a particular direction the majority of times to create a nuisance on neighboring property.

### B.    LKQ's Objection to the Court Taking Judicial Notice of LKQ's Website Content

The court **overrules** this objection.  Publicly available information on a company's official website may be considered "an authoritative source" in certain contexts when the facts a court is taking notice of may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Reed v. LKQ Corp.*, No. 3:14-CV-4412-L, __ F. Supp. 3d __, 2020 WL 487496, at *3 (N.D. Tex. Jan. 30, 2020) (citing *United States v. Flores*, 730 F. App'x 216, 219 n.1 (5th Cir. 2018) (Haynes, J., concurring) (internal citation omitted) (holding that "publicly available [information] on [a company's] official website" may be considered "an authoritative source" in

certain contexts when the facts a court is taking notice of may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); 2 McCormick on Evid. § 330, Facts Capable of Certain Verification (7th ed. 2016) ("Information obtained from online sources is becoming a frequently used basis for judicial notice. To this point, government and corporate websites and well-recognized mapping services are among the most commonly relied upon sources.") (footnotes omitted).  Moreover, the court does not believe, that LKQ would put or allow false information to appear on its website, and it would be unreasonable for the court to infer.

Further, as Plaintiff notes, the evidence shows that LKQ proposed to add a 30-to 40-foot fence and plant additional trees on higher ground to remedy the nuisance and improve the screening of its Burleson facility.  This evidence supports the finding that LKQ has the resources to lessen the noise.  Also, the evidence is that LKQ has four facilities in the DFW metroplex and a number of employees.  Given the appraised value of Mr. Reed's property (which is in the record as $183,727 in 2017), as contrasted with the four DFW facilities, the court reasonably infers that LKQ has substantially more resources and was in a much better position to effect barriers to the noise and debris than Mr. Reed.

### C.    LKQ's Argument that the Court Did Not Consider the Other Facility South of LKQ that Also Produces Dust

The court **overrules** this argument or objection.  The court explicitly stated that there are other sources of dust, including a construction site south of LKQ that produce some dust, but that the dust from the other source was not a significant source of the dust on Mr. Reed's property. *See* Finding of Fact No. 41; see also *Reed v. LKQ Corp.*, No. 3:14-CV-4412-L, __ F. Supp. 3d __, 2020 WL 487496, at *16 (N.D. Tex. Jan. 30, 2020) ("While Mr. Massey testified that others in the vicinity of Mr. Reed's home may have engaged in activities that also produced dust, and Mr. Reed

conceded that some of the dust on his property may have come from others, based on Mr. Reed's testimony, Mrs. Reed's testimony, Mr. Massey's acknowledgment in his May 9, 2014 e-mail to Mr. Reed that LKQ caused the dust and debris (Pl.'s Ex. 25), photographs and videotapes, and the direction of the prevailing winds blowing from LKQ's facility toward Mr. Reed's property, *supra*, the court concludes that any dust generated by other sources in the vicinity of Mr. Reed's property was not a significant cause or source of dust on Mr. Reed's property.  In addition, Mr. and Mrs. Reed both testified that[,] prior to LKQ commencing construction, they had no problems with dust or debris on their property.  Tr. 121, lines 11-14; Tr. 126, lines 23-25.").  This testimony was not contradicted or refuted by LKQ.  Even if it were contradicted or refuted, LKQ has not produced credible evidence to show that it was competent to contradict or refute the testimony.

### D.    LKQ's Argument that There Was Insufficient Evidence to Support Liability and the Damages Awarded

The court **rejects** this argument for reasons set forth in its Memorandum Opinion and Order (Doc. 90) and Plaintiff's Response at 6-3 (Doc. 96).  The court is convinced that the evidence was more than sufficient to make a finding of liability against LKQ.  The court has painstakingly reviewed its Memorandum Opinion and Order and the briefing by the parties, and determines that nothing of significance is accomplished by parsing each of LKQ's arguments, many of which misapprehends the court's ruling and are made solely for the purpose of relitigating issues on which it did not prevail.  Simply stated, the court's findings and conclusions stand, and it is not inclined to change its position on LKQ's liability.

Likewise, the court will not rewrite its determination of the damages awarded.  There was sufficient evidence to support the award in the trial record.  The court awarded no damages to Mrs. Reed or to their son.  The testimony of Mrs. Reed was simply used to corroborate Mr. Reed's

testimony in describing the nature of the interference with Mr. Reed's use and enjoyment of his property.

### E.    LKQ's Footnote 4 in Its Brief (Doc. 93)

In footnote 4 of its brief (Doc. 93), LKQ stated the following:

> LKQ notes that this was apparently not the only time the Court did its own research.  *See* APP. 009, Lines 9-19 (discussing the Court's Google search).  There is conflicting information in the record as to whether the Court reopened evidence (*compare* Doc. 80 ("the court **reopens** the evidence in this case. . ." and APP. 008, Lines 13-16, APP. 017, Lines 10-18, and APP. 019, Lines 7-11)), but it is clear that the Court visited Plaintiff's property several times outside the presence of the parties.  APP. 007: 4-13 ("Unbeknownst to the parties, I have driven out here before, observed the place in the morning and in the afternoon.").

Def.'s Br. 10 n.4.  The court takes umbrage with this statement because it strongly implies or suggests that the court was engaging in some kind of nefarious conduct to the detriment of LKQ or was somehow biased towards it.

The court was open and honest with the parties and was not engaging in any kind of sinister or untoward conduct.  Yes, the court drove by and visited the site on July 29, 2019, at around 9:30 for about 15 minutes and returned the same day, after going to lunch in Fort Worth, and observed the site for approximately 10 minutes at that time the court determined that it needed the assistance of both parties, which is why it sought a site inspection with both parties present.  The whole purpose of conducting a site inspection was for the parties to assist the court and reopen the evidence for the limited purpose of clarifying a few matters.  Neither party objected to the site inspection or reopening the evidence initially.  It was only during the site inspection after the court began asking questions of the parties and explained certain matters that LKQ's counsel voiced objections to reopening the evidence, which caught the court by surprise because a site inspection with no explanation or answers to the court's inquiries is of no benefit.  Because of LKQ's objection, the court did not take into account anything that was said or observed during the site

**Memorandum Opinion and Order – Page 9**

inspection, although statements were made that would have supported both parties' respective positions. The court made it clear in its ruling that it did not consider anything that took place at the site inspection, yet LKQ attaches the transcript of what took place at the site inspection to its reply to Plaintiff's response to imply otherwise. Once again, the court reiterates that it used no part of what was said or observed during the site inspection in its ruling. This is simply a red herring by LKQ to ascribe some improper motive on the court's part.

The court makes this reasonable inference because LKQ omitted the introductory sentence to the court's statement. The court candidly stated, "And I will say this on the record[,]" Def.'s App. 9, and then the sentence starting with "Unbeknownst" begins. Had the court been trying to hide something from the parties, it would never have made any statement. Because further clarification would have immensely facilitated the task the court had to perform, it merely sought to gather additional information. In retrospect, the site inspection was a colossal failure that unnecessarily consumed scarce judicial resources, and the court is at a loss as to why LKQ ever agreed to the site inspection. To avoid any confusion, the court allows the filing of the transcript of the site inspection *only* for record purposes.

The court understands that a party may disagree with its decision. That is why we have appellate courts, and this court does not hold it against a party for exercising that right, but impugning the court in the process is unprofessional and goes "beyond the pale."

## IV.   Conclusion

For the reasons herein stated, the court **concludes** that no grounds exist to grant a new trial or to alter or amend the court's judgment. Accordingly, the court **denies** Defendant's Motion for New Trial or to Alter or Amend Judgment. Although the court sustained some of Defendant's objections, the objections were not substantive in that there was other relevant evidence to support the court's findings of fact, and sustaining the objections did not alter or change the outcome

regarding the court's conclusions of law.  For this reason, the objections sustained by the court are quite beside the point.

**It is so ordered** this 30th day of September, 2020.

Sam A. Lindsay
United States District Judge